UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------X
BROWN BUDDA NEW YORK, LLC,

Plaintiff,

-against-

TOWN OF SOUTHAMPTON; NEW YORK STATE OFFICE OF CANNABIS MANAGEMENT (OCM), as a "necessary party,"

Defendants.
---------------------------------X

MEMORANDUM & ORDER
25-CV-5053(JS)(ARL)

APPEARANCES

For Plaintiff: Christian Killoran, Esq.
Killoran Law PC
P.O. Box 918
Remsenburg, New York 11960

For Defendant Town of Southampton: Brian S. Sokoloff, Esq.
Vincent Edward Ferry, Esq.
Sokoloff Stern LLP
179 Westbury Avenue
Carle Place, New York 11514

For Defendant New York State Office of Cannabis Management (OCM): Tashi Topgyal Lhewa, Esq.
New York Office of the Attorney General
300 Motor Parkway, Suite 230
Hauppauge, New York 11788

SEYBERT, District Judge:

Presently before the Court is a motion to amend the Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a) ("Motion") filed by Plaintiff Brown Budda New York, LLC ("Plaintiff"). (See Motion, ECF No. 28.) In relevant part, Plaintiff's proposed second amended complaint ("PSAC") alleges Defendant Town of Southampton ("Town"): (1) unlawfully violated Plaintiff's right to equal protection under the Fourteenth Amendment to the Constitution and 42 U.S.C. § 1983 ("Section 1983)"; and (2) conspired with another local cannabis dispensary to restrain economic activity in the Town to Plaintiff's detriment in violation of the Donnelly Act, N.Y. GEN. BUS. LAW § 340 ("Donnelly Act"). (See generally PSAC, ECF No. 28-2.) The Town opposed Plaintiff's Motion. (See Opp'n, ECF No. 32.) For the reasons stated herein, Plaintiff's Motion is DENIED in its entirety, without prejudice to renew.

## BACKGROUND

### I. The Amended Complaint[1]

#### A. New York State Cannabis Law

In or about March 2021, the New York state ("State") legislature enacted the Marijuana Regulation and Taxation Act

[1] The following facts are drawn from Plaintiff's Amended Complaint (unless otherwise stated) and are accepted as true to the extent necessary to resolve the instant Motion.

("Cannabis Law"). (See Am. Compl., ECF No. 9, ¶ 1); N.Y. CANBS. LAW §§ 1, et seq. The Cannabis Law was enacted to "regulate, control and tax" the sale of marijuana[2] within the State while investing in the communities and people disproportionately impacted by the criminalization of cannabis. (Am. Compl. ¶ 3.) Thus, the Cannabis Law sought to remedy the "historical inequities suffered" by marijuana users, particularly, "New York State's African American (Black) populace." (Id. ¶ 4.)

To advance the intended purpose of the Cannabis Law, the State established the Office of Cannabis Management ("OCM") and the Cannabis Control Board to promulgate regulations and to issue licenses to applicants required for their sale and distribution of marijuana within the State. (See id. ¶¶ 6-8.) Under the Cannabis Law, only State-licensed cannabis "dispensaries" are permitted to sell adult-use or recreational marijuana. (Id. ¶ 9.) The Cannabis Law also precludes local municipalities from "hindering" the lawful operation of State-licensed dispensaries. (Id. ¶¶ 10-14); see also N.Y. CANBS. LAW § 127.

When enacted, the Cannabis Law allowed municipalities, like the Town, to opt-out of allowing adult-use cannabis retailers and on-site cannabis consumption sites within their jurisdictions. (See Am. Compl. ¶¶ 12-14); see also N.Y. CANBS. LAW § 131. To

---

[2] The Court refers to "marijuana" and "cannabis" interchangeably throughout this Memorandum and Order.

opt-out, municipalities were required to enact laws prohibiting such cannabis-related establishments within their jurisdiction by no later than December 31, 2021. See id. Thus, municipalities which did not opt-out by the December 31, 2021, deadline must permit State-licensed dispensaries to sell and distribute cannabis within their jurisdictions in accordance with the Cannabis Law. (See Am. Compl. ¶¶ 12-14.) Municipalities that declined to opt-out may only implement local laws and regulations restricting the time, place, and manner of such cannabis dispensaries' operations, so long as the laws do not make the dispensaries' operation "unreasonably impracticable." (See id. ¶ 12); N.Y. CANBS. LAW § 131. Here, the Town did not timely opt-out in accordance with the Cannabis Law. (See Am. Compl. ¶ 37.)

B. Plaintiff Sought to Open a Cannabis Dispensary in the Town

According to public record, Plaintiff, "Brown Budda New York LLC," (originally formed as "Keep it 100 LLC" ("Plaintiff's Predecessor") (see id. ¶ 15)) is a limited liability company organized under the laws of New York state.[3] In September 2022, Plaintiff applied to the State to operate as a "marijuana distributor," and sought to offer retail, delivery, and on-site

[3] Plaintiff failed to provide this information in the Amended Complaint or PSAC. (See id., in toto; see also PSAC, in toto.) The Court also notes that neither the Amended Complaint nor PSAC alleges the citizenship of Plaintiff's LLC member(s).

cannabis consumption services. (Id. ¶¶ 16, 22.) On November 17, 2022, Plaintiff's Predecessor was issued a provisional, Conditional Adult-Use Retail Dispensary ("CAURD") license which was later transferred to Plaintiff in September 2023. (See id. ¶ 17.) The CAURD license was designed to expedite Plaintiff's market entry and insulate it from "burdensome and/or redundant local municipal approvals and requirements." (Id. ¶ 18.) But on April 11, 2023, after Plaintiff applied for a license to operate within the Town, the Town legislated local Town Code ("Town Code") Section 330-162.26, which mandated that any non-medical cannabis dispensary receive a "special use permit" prior to operating. (Id. ¶¶ 20, 44.) Section 330-162.26 details various requirements necessary to obtain a special use permit, including but not limited to, additional discretionary requirements which may be imposed by the Town's Planning Board. See SOUTHAMPTON, N.Y., CODE § 330-162.26 (2023).

On June 14, 2024, the State fully licensed Plaintiff to operate as a cannabis dispensary, and Plaintiff sought to offer both retail and delivery services. (Id. ¶¶ 21, 35—38.) At the time, Plaintiff was only the fourth dispensary on Long Island to obtain this license, and there were no dispensaries operating in the Town. (See id. ¶¶ 39—40.) Thus, Plaintiff sought to capitalize on being a "first to market" business. (Id. ¶ 41.)

But Plaintiff could not do so because the Town required Plaintiff to first obtain a special use permit. (See id. ¶ 42.)

The Town's imposition of a special use permit requirement on Plaintiff constituted a "deliberate and unlawful" application of local zoning law, and thus, precluded Plaintiff from operating, despite Plaintiff being fully authorized to do so under State law. (Id. ¶¶ 26-28.) The Town's conduct not only violated State law but also "discriminat[ed] against a minority-owned/equity-priority business."[4] (Id. ¶ 30.) Even if the Town's special use permit requirement was a permissible time, place, or manner restriction, it still violated the Cannabis Law because it hindered Plaintiff's delivery service which is unrelated to "retail sales" or "on-site consumption." (Id. ¶¶ 32, 49 (internal quotation marks omitted).)

On October 6, 2025, OCM issued an advisory opinion finding certain Town zoning requirements applicable to adult-use cannabis dispensaries unreasonably impracticable and preempted by the Cannabis Law ("October 6 Advisory"). (See id. ¶¶ 71-75.) Despite this, the Town insisted Plaintiff obtain both "site-plan" approval pursuant to Town Code Section 330-182 and "special exception" approval pursuant to Section 330-162.26. (Id. ¶ 47.)

[4] Neither the Complaint nor the PSAC includes information about Plaintiff's owners or members, apart from noting Marquis Hayes is an African American man and Plaintiff's "managing member", "largest shareholder", and "CEO." (Id. ¶¶ 15 n.2, 118.)

When Plaintiff failed to secure these approvals, the Town informed Plaintiff "no commercial activity may be conducted at the subject premises . . . until [] site-plan approval is obtained." (Id. ¶ 48.)

Plaintiff maintains the conditions required by the Town to secure a special use permit either directly conflict with, or are made redundant by, the conditions required by the State. (See id. ¶ 52.) Moreover, the Town's requirements are not supported by "substantial evidence" and are instead motivated by "unspoken animus" and "nimbyism" against the cannabis industry and Plaintiff's business. (Id. ¶¶ 53, 56.) Indeed, as of the filing of this action, five "license applicants[5] have applied to operate" within the Town, but the Town had not approved any such applications. (Id. ¶ 58.)

As a result of the Town's conduct, Plaintiff has been "unable to operate" since receiving its license from the State. (Id. ¶ 61.) Because Plaintiff could not lawfully operate, it lost inventory, profits, and access to private investment funding, as well as incurred legal, "engineering", rent, "building", and other administrative fees and costs to comply with the Town's demands. (Id. ¶¶ 62-69.) Plaintiff also lost the benefit of being a "'first to market' business on Long Island." (Id.) Thus, Plaintiff

[5] The Amended Complaint is unclear as to the "license" for which these five entities or individuals "appl[ied]." (Id. ¶ 58.)

allegedly suffered financial harm to its business amounting to more than 20 million dollars in damages. (See id. ¶¶ 62-68.)

## II. Procedural History

Plaintiff commenced this action against the Town in New York State Supreme Court, County of Suffolk, on August 26, 2025. (See id. ¶ 162.) The Town removed this action to federal court on September 9, 2025. (See generally Notice of Removal, ECF No. 1.) Plaintiff amended its Complaint on October 23, 2025, to add Defendant OCM as a necessary party to the action. (See generally Am. Compl.) In addition to certain State law claims, the Amended Complaint alleges the Town unlawfully violated Plaintiff's Fourteenth Amendment rights to procedural and substantive due process and equal protection in violation of Section 1983. (See id. ¶¶ 89, 93-96, 103, 106-107.) Specifically, Plaintiff alleges the Town treated Plaintiff "unequally" because it is a marijuana distributor. (Id. ¶ 110.) On December 17, 2025, Plaintiff filed the instant Motion, seeking to add factual allegations in support of its equal protection and Donnelly Act claims. (See generally Motion.) On January 12, 2026, the Town submitted its opposition ("Opposition") to the Motion. (See generally Opp'n.)

## III. Plaintiff's Proposed Second Amended Complaint

### A. Plaintiff Seeks to Bolster its Equal Protection Claim

The PSAC proffers additional factual allegations to bolster Plaintiff's equal protection claim. (Id. ¶¶ 123-96.)

Plaintiff alleges the Town has discriminated against the cannabis industry "at-large." (Id. ¶ 130.) Despite the Town's alleged widespread discrimination against cannabis dispensaries, Plaintiff discusses at length the opening of Charlie Fox, another cannabis dispensary in the Town. (See generally id. ¶¶ 131-96.) Plaintiff and Charlie Fox are State-licensed to distribute cannabis. (See id. ¶ 150.) Both Plaintiff and Charlie Fox sought to establish dispensaries in the Town, applied to operate their businesses within the Town's "Highway Business District [] along County Road 39," and were subject to the Town's special use exception approval process. (Id. ¶¶ 151-55.) However, Plaintiff secured a State CAURD license and applied to the Town for a special use exception before Charlie Fox. (See id. ¶¶ 180-82.)

Shortly after Plaintiff filed its original Complaint against the Town, Charlie Fox publicly announced it would open for business in the Town, despite failing to obtain "special exception approval." (Id. ¶ 131.) Charlie Fox opened on September 16, 2025,[6] and the Town pursued injunctive relief to cease Charlie Fox's operations. (See id. ¶¶ 133-34.) On October 3, 2025, a State court granted the Town's request for injunctive relief and precluded Charlie Fox from opening. (See id. ¶ 136.) Following the court's grant of injunctive relief, OCM issued its October 6

[6] Absent from the Amended Complaint and PSAC is any mention of when Plaintiff first opened for business in the Town.

Advisory. (See id. ¶ 138.) After OCM issued this Advisory, the Town and Charlie Fox entered an "informal agreement" in which Charlie Fox voluntarily discontinued its business to obtain "necessary Town approvals," and in turn, the Town sought to lift its temporary restraining order against Charlie Fox. (Id. ¶¶ 140-43, 174.) On November 20, 2025, the Town approved Charlie Fox's "special permit application" despite Charlie Fox's failure to comply with all building safety conditions previously required by the Town. (Id.) Charlie Fox reopened for business on November 22, 2025. (See id. ¶ 145.) Plaintiff, however, has remained unable to secure special exception approval from the Town, and the Town continues to issue "citations" against Plaintiff and its landlord. (See id. ¶¶ 148-49.)

Plaintiff maintains Charlie Fox agreed not to sue the Town in exchange for the Town's "expedited approval" of Charlie Fox's "special use permit application." (Id. ¶ 146.) Although Plaintiff and Charlie Fox are "materially [] similar" candidates for a special use exception, the Town has required only Plaintiff to adhere to more onerous pre-conditions to operating its business. (Id. ¶¶ 155-56.) This has resulted in additional financial losses for Plaintiff because it cannot market itself as the first "legalized" dispensary within the Town. (Id. ¶ 189.) This also frustrates the purpose of the Cannabis Law's CAURD licensing program (of which Charlie Fox is not a licensee), because the

program intended to give CAURD licensees, like Plaintiff, "first to market status," a competitive advantage which is now lost. (Id. ¶ 191.)

The PSAC further alleges the Town strategically approved Charlie Fox's special exception application to avoid further lawsuits from cannabis dispensaries while bolstering its defense against the instant action by showing it does not harbor discriminatory animus towards businesses in the cannabis industry. (See id. ¶¶ 193, 195.)

### B. Plaintiff Also Seeks to Add a Donnelly Act Claim

The PSAC also sets forth a cause of action against the Town for violation of the Donnelly Act. (See id. ¶¶ 198-99.) Plaintiff contends the Town's disparate enforcement of Town Code Section 330-162.26 has resulted in "an unfair and unequal restraint of free trade suffered by" Plaintiff. (Id. ¶ 200.) That is the extent of Plaintiff's proffered allegations specific to its Donnelly Act claim. (See generally id. ¶¶ 197-201).

## IV. Material Factual Developments Since Plaintiff Filed This Motion

Although not at issue for purposes of resolving the instant Motion, there have been several material factual developments since Plaintiff filed this Motion. On February 27, 2026, the Court held an in-person status conference with the parties regarding this action. (See Feb. 27, 2026, Minute Entry.)

At that conference, on the record, the parties asserted Plaintiff was fully operating as a cannabis dispensary in the Town. Thus, Plaintiff is currently open for business and has been for at least five months. According to a public records search, Plaintiff's State license to operate as a cannabis dispensary is also current and remains effective until June 14, 2028. See Current OCM Licenses, DATA.NY.GOV, https://data.ny.gov/Economic-Development/Current-OCM-Licenses/jskf-tt3q/data_preview (last viewed Aug. 12, 2026). These facts are not included in the PSAC.

At the February 27, 2026, conference, the parties also maintained the Town's alleged insistence Plaintiff construct a sidewalk abutting its property remained a point of contention. Plaintiff contends the Town is unreasonably requiring Plaintiff to install a sidewalk and issuing citations for Plaintiff's refusal to do so, but the Town counters the requirement is that of Suffolk County, which is not a party to this action, but should be.

## DISCUSSION

### I. Legal Standard for Motion to Amend

#### A. Rule 15(a), Generally

Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, courts have discretion to allow parties to amend their pleadings "when justice so requires." FED. R. CIV. P. 15(a)(2); see also TechnoMarine SA v. Giftports, Inc., 758 F.3d 493, 505 (2d Cir. 2014); Amaya v. Roadhouse Brick Oven Pizza, Inc., 285 F.R.D.

251, 253 (E.D.N.Y. 2012) ("A court should freely give leave when justice so requires, and such leave is in the court's discretion." (citation modified)). The amendment standard is liberal, permitting plaintiffs "to assert matters that were overlooked or were unknown at the time of the original complaint or answer." RCX I, LLC v. Pitter-Nelson, No. 11-CV-3513, 2014 WL 5809514, at *5 (S.D.N.Y. Nov. 6, 2014) (citation modified).

But where there is "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment," a Rule 15 motion should be denied. Amaya, 285 F.R.D. at 253; see also Francisco v. Abengoa, S.A., 559 F. Supp. 3d 286, 310 (S.D.N.Y. 2021) ("[A] motion to amend should be denied only if the moving party has unduly delayed or acted in bad faith, the opposing party will be unfairly prejudiced if leave is granted, or the proposed amendment is futile." (quoting Agerbrink v. Model Serv. LLC, 155 F. Supp. 3d 448, 452 (S.D.N.Y. 2016))). "The party opposing a motion to amend bears the burden of establishing that the amendment should be denied." Baptiste v. Suffolk County, No. 19-CV-0042, 2022 WL 1224570, at *4 (E.D.N.Y. Apr. 26, 2022).

B. Futility of Amendment

Futility warrants denial of leave to amend when it is "beyond doubt that the plaintiff can prove no set of facts in support of [its] amended claims." Franciso, 559 F. Supp. 3d at 315. The nonmovant bears the burden of establishing amendment is futile. See id.; see also Joinnides v. Floral Park-Bellerose Union Sch. Dist., No. 12-CV-5682, 2015 WL 1476422, at *9 (E.D.N.Y. Mar. 31, 2015). "To determine whether a proposed pleading is futile, courts analyze whether it would withstand a motion to dismiss pursuant to Rule 12(b)(6)" for failure to state a claim upon which relief can be granted. Franciso, 559 F. Supp. 3d at 315. Thus, a court must accept all facts alleged by a plaintiff as true and construe such facts in the light most favorable to the plaintiff. See Oneida Indian Nation of N.Y. State v. County of Oneida, N.Y., 199 F.R.D. 61, 88 (N.D.N.Y. 2000). "If the proposed amended complaint would be subject to 'immediate dismissal' for failure to state a claim or on some other ground, [a] [c]ourt will not permit amendment." Id. (emphasis in original) (internal quotation marks and citation omitted).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." Basile v. Levittown United Tchrs., 17 F. Supp. 3d 195, 200 (E.D.N.Y. 2014) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Ashcroft v. Iqbal,

556 U.S. 662, 678 (2009). Although a complaint facing dismissal need not include detailed factual allegations, a plaintiff must articulate the grounds of its entitlement to relief beyond mere "labels and conclusions." Twombly, 550 U.S. at 555. "[A] formulaic recitation of the elements of a cause of action" is insufficient. Id. Thus, a pleading supported only by legal conclusions disguised as facts cannot survive a motion to dismiss. See Garcia v. Paylock, No. 13-CV-2868, 2014 WL 298593, at *4 (E.D.N.Y. Jan. 28, 2014) (citation omitted); Iqbal, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

A court's evaluation of a motion to dismiss under Rule 12(b)(6) is limited to the following: (1) factual allegations in the complaint; (2) documents attached as an exhibit or incorporated by reference into the complaint; (3) matters of which judicial notice may be taken; and (4) documents "upon whose terms and effect the complaint relies heavily, i.e., documents that are 'integral' to the complaint." D.C. v. Copiague Union Free Sch. Dist., No. 16-CV-4546, 2017 WL 3017189, at *3 (E.D.N.Y. July 11, 2017).

II. Analysis

Plaintiff moves to amend the Amended Complaint under Rule 15(a). The Town opposes the Motion, contending, inter alia, the proposed amendments would be futile because Plaintiff lacks

standing to bring claims pursuant to Section 1983 and the Fourteenth Amendment to the United States Constitution because the possession, distribution, and sale of marijuana is not a federally protected right. (See generally Opp'n.) Before reaching the merits of Plaintiff's Motion (and the Town's attendant Opposition), the Court must first address Plaintiff's standing to bring this action.

A. Standing

Standing challenges are properly addressed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. See Evolution Fast Food One, LP v. HVFG, LLC, 720 F. Supp. 3d 251, 259 (S.D.N.Y. 2024). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Id. at 260 (internal quotation marks and citation omitted). Article III standing and statutory standing are distinct. See id.

> [Article III standing] is a constitutionally imposed limit on a federal court's power to hear a case. Statutory standing, by contrast, is a somewhat misleading term because it refers to a nonjurisdictional inquiry that does not implicate the court's statutory or constitutional power to adjudicate the case. Instead, it concerns whether a plaintiff has a cause of action under the statute. Therefore, a lack of statutory standing requires dismissal for failure to state a claim, while lack of Article III standing requires dismissal for lack of subject matter jurisdiction. This distinction matters not only because of a court's independent

> obligation to examine its own jurisdiction, but also because the distinction bears on the preclusive effect of the court's decision.

Id. (emphasis in original) (quotation marks and citations omitted); see also All for Env't Renewal, Inc. v. Pyramid Crossgates Co., 436 F.3d 82, 88 n.6 (2d Cir. 2006) (noting unlike dismissal for lack of subject matter jurisdiction under Rule 12(b)(1), a dismissal under Rule 12(b)(6) for failure to state a claim is "an adjudication on the merits with preclusive effect").

Thus, as a threshold matter, a court must evaluate a plaintiff's Article III standing "even though not raised earlier in the litigation[;] indeed, this Court would have to raise [the issue] sua sponte." Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 93 (1998). But in its Opposition, the Town fails to specify whether it contends Plaintiff lacks Article III standing or statutory standing. The Court thus considers the question of Plaintiff's standing as follows.

i. Article III Standing

To establish Article III standing, a plaintiff must show: (1) "he suffered an injury in fact that is concrete, particularized, and actual or imminent"; (2) "the injury was likely caused by the defendant"; and (3) "the injury would likely be redressed by judicial relief." Evolution Fast Food One, LP, 720 F. Supp. 3d at 261. An injury in fact is "an invasion of a legally protected interest," Lujan v. Defs. of Wildlife, 504 U.S. 555, 560

(1992), such as property rights, rights arising out of contract, rights protected against tortious invasion, or rights arising from a statute conferring a privilege. See Tenn. Elec. Power Co. v. Tenn. Val. Auth., 306 U.S. 118, 137 (1939), overruled on other grounds by Bond v. United States, 564 U.S. 211 (2011). A plaintiff may not rely solely upon past injury but must also plausibly allege "a real and immediate threat of future injury." Gannon v. Hua Da, Inc., No. 22-CV-1650, 2023 WL 2664012, at *2 (S.D.N.Y. Mar. 28, 2023); see also Calcano v. Swarovski N. Am. Ltd., 36 F.4th 68, 74 (2d Cir. 2022).

If a plaintiff is an entity, it may establish either "associational" or "representational" standing to sue "on behalf of its members, or by establishing [] it was directly injured as an organization." Evolution Fast Food One, LP, 720 F. Supp. 3d at 261. To establish direct injury, the organization must satisfy the same standing test applicable to individuals. See id. An Article III injury may arise from a defendant's conduct that "frustrates an organization's mission" and the organization dedicates resources to "combatting the conduct." Id. (internal quotation marks and citation omitted). An organization can also establish injury if it asserts it needed to "divert resources from other activities to address the harm caused by a defendant's conduct." Id. (internal quotation marks and citation omitted).

To the extent the Town argues Plaintiff lacks Article III standing, the Court disagrees. Article III standing requires only that a "plaintiff [] allege[] an injury-in-fact that is traceable to the defendant's conduct and redressable by the requested relief." Noel v. Pepsico, Inc., No. 24-CV-7516, 2026 WL 558118, at *8 (S.D.N.Y. Feb. 27, 2026) (citations omitted) (citing Duke v. Luxottica U.S. Holdings Corp., 167 F.4th 16, 27-28 (2d Cir. 2026) (rejecting argument that plaintiff did not have standing where her requested remedy was "categorically unavailable under [the statute]" because "this argument target[ed] the merits of [plaintiff]'s claims, not her standing to pursue them" (citation modified)). "In addition to satisfying the core Article III requirements," a plaintiff need not demonstrate the statute "under which [it] sue[s] can provide [its] requested relief." Noel, 2026 WL 558118, at *8.

Here, the PSAC contends the Town's refusal to grant Plaintiff a special use permit or "special exception" is onerous, arbitrary, and discriminatory, thereby violating Plaintiff's Fourteenth Amendment rights by hindering and harming Plaintiff's cannabis business and related property. (See PSAC ¶¶ 155-56, 191, 193, 195.) Plaintiff has allegedly incurred substantial costs and fees in trying to placate the Town's unlawful demands, amounting to more than 20 million dollars in damages. (See id. ¶¶ 62-68.) And such injury is likely to continue because the Town continues

to issue Plaintiff "citations" related to the operation of its cannabis business. (See id. ¶¶ 148-49.) Plaintiff thus seeks economic and injunctive relief. (See id. ¶¶ 62-69.)

In opposition, the Town contends Plaintiff cannot have a constitutionally protected ownership or property interest in the possession or distribution of marijuana. (See Opp'n at 2-5.) However, in the context of Article III standing, a plaintiff's "[o]wnership interest is determined under the law of the state in which the interest arose." Shulman v. Kaplan, 58 F.4th 404, 408 (9th Cir. 2023) (internal quotation marks and citation omitted). New York state's recognition of cannabis-related property interests is undisputed, see, e.g., N.Y. CANBS. LAW §§ 1, et seq., and the Second Circuit has held that plaintiffs pursuing actions in federal court related to the sale or distribution of marijuana have Article III standing. See Variscite NY Four, LLC v. N.Y. State Cannabis Control Bd., 152 F.4th 47, 58-59 (2d Cir. 2025) (holding plaintiffs established Article III standing to sue the State for certain claims related to CAURD licensing). As the Ninth Circuit has instructed, "the fact that [Plaintiff] seek[s] damages for economic harms related to cannabis is not relevant to whether a court could, theoretically, fashion a remedy to redress their injuries. Therefore, the alleged harm in this case is redressable by the federal court." Shulman, 58 F.4th at 409.

Accordingly, both the Amended Complaint and PSAC establish Plaintiff's Article III standing.

ii. Statutory Standing

Unlike Article III standing, "statutory standing" is not a threshold jurisdictional inquiry that must be resolved before considering the merits of a claim. See Sundown by Farkas v. Aetna Life Ins. Co., No. 23-CV-1905, 2024 WL 1051165, at *4 (E.D.N.Y. Jan. 16, 2024) ("Challenges to a plaintiff's statutory authorization are properly understood as Rule 12(b)(6) motions to dismiss for failure to state a claim."). Instead, statutory standing evaluates whether a plaintiff "falls within the class of plaintiffs whom Congress has authorized to sue" under the statute or, more simply, whether a plaintiff "has a cause of action under the statute." Id. (internal quotation marks and citations omitted). Thus, challenges to a plaintiff's statutory standing have preclusive effect and are evaluated as motions to dismiss for failure to state a claim pursuant to Rule 12(b)(6). See id. at *5.

However, in this instance and in its discretion, the Court declines to convert the instant Motion into a motion to dismiss the Amended Complaint with prejudice at this juncture. Instead, it evaluates only whether the claims proffered in the PSAC warrant leave to amend.

B. Plaintiff's Proposed Amendments are Futile

i. Equal Protection Claim

The PSAC asserts an equal protection claim arising under Section 1983 to "enforce rights guaranteed by the Constitution." Billeris v. Inc. Village of Bayville, N.Y., 694 F. Supp. 3d 214, 225 (E.D.N.Y. 2023). Under Section 1983, violations of the Constitution are evaluated according to a two-step inquiry. See Golden State Transit Corp. v. City of Los Angeles, 493 U.S. 103, 106 (1989). "First, the plaintiff must assert a violation of a federal right." Id. (emphasis added). To determine if a federal right has been violated, a court considers whether the provision at issue "creates obligations binding on the governmental unit or [] 'does no more than express a congressional preference for certain kinds of treatment." Id. (internal quotation marks and citation omitted). Courts also ask whether the provision at issue was intended to benefit the plaintiff. See id. And the asserted interest must not be so vague and amorphous the court is unable to enforce it. See id. Second, even if a plaintiff asserts a federal right, the defendant may show Congress "specifically foreclosed a remedy under [Section] 1983" by instead providing an administrative or other enforcement mechanism to protect that right. Id.

The PSAC seeks to bolster Plaintiff's claim the Town violated Plaintiff's federal right to equal protection. The Equal

Protection Clause of the Fourteenth Amendment "guarantees the right to be free from invidious discrimination in statutory classifications and other governmental activity." D.C. v. Copiague Union Free Sch. Dist., No. 16-CV-4546, 2017 WL 3017189, at *6 (E.D.N.Y. July 11, 2017). While an equal protection claim may be based on a plaintiff's allegations it was a victim of discrimination stemming from its membership in a protected class, equal protection rights also extend to individuals who allege disparate treatment based on "ill will or without rational basis." Buonanotte v. Noonan, 534 F. Supp. 2d 385, 393 (E.D.N.Y. 2008).

A plaintiff that does not allege to be a member of a constitutionally protected class may state an equal protection claim pursuant to one of two theories: "(1) selective enforcement, or (2) class of one." Kirton v. Doe, No. 20-CV-10860, 2024 WL 809904, at *5 (S.D.N.Y. Feb. 27, 2024) (internal quotation marks and citation omitted). Under either theory, a plaintiff must identify a similarly situated comparator that received differential treatment. See Hu v. City of N.Y., 927 F.3d 81, 93 (2d Cir. 2019). Whether two comparators are similarly situated is generally a question of fact. See Harper v. Vill. of Hillburn, No. 25-CV-0342, 2025 WL 2653673, at *6 (S.D.N.Y. Sept. 16, 2025). But under Rule 12(b)(6), a court must determine whether a jury could plausibly find the comparators similarly situated based on the allegations in the complaint. See id.

Pursuant to the Controlled Substances Act ("CSA"), marijuana is a Schedule I controlled substance, and its sale and distribution are prohibited by federal law. See 21 U.S.C. §§ 812, 841(a)(1); see also Cannabis Impact Prevention Coalition, LLC v. Hochul, 222 N.Y.S.3d 891, 905 (Sup. Ct. Sept. 20, 2024) ("Marijuana is classified as a Schedule I substance . . . based on its high potential for abuse, no accepted medical use, and no accepted safety for use in medically supervised treatment"). As courts outside this Circuit have aptly found, there is no federal Constitutional right protecting a plaintiff's possession, sale, or distribution of marijuana. See Hoover v. Michigan Dep't of Licensing and Regul. Affs., No. 19-CV-11656, 2020 WL 230136, at *9 (E.D. Mich. Jan. 15, 2020) ("although [] [Michigan law] provides narrow exceptions for marihuana use . . . under the federal [CSA] . . . it is illegal for any private person to possess marihuana for any purpose." (citation modified)); Salazar v. City of Adelanto, No. ED CV 19-2333, 2020 WL 5778122, at *7 (C.D. Cal. Aug. 31, 2020), report and recommendation adopted by No. ED CV 19-2333, 2020 WL 5764404 (C.D. Cal. Sept. 24, 2020) ("[C]ourts . . . have uniformly found that no private person can have a cognizable property interest in marijuana, even where the state has decriminalized its possession, cultivation, and/or sale."); Georgia Atlas, Inc. v. Turnage, 594 F. Supp. 3d 1339, 1346 (N.D. Ga. 2022) ("Since Plaintiffs do not have a federal

constitutional or statutory right to manufacture, distribute, or possess marijuana, having been denied a license to do so by the State of Georgia is not an injury-in-fact sufficient to confer standing for their Section 1983 claims.”).

Although the sale and distribution of adult-use marijuana is legal under New York state law, this practice is plainly prohibited for any purpose under federal law. Thus, Plaintiff does not have a Constitutional right to equal protection in connection with Plaintiff’s sale of marijuana. Cf. id. (“Even assuming the process to which Plaintiffs were subjected was plagued with unfairness and rife with error, marijuana is still contraband.”). No possible amendment to Plaintiff’s Complaint would change this fact. As such, Plaintiff’s request for leave to amend its equal protection claim is futile.

Even if Plaintiff had a federally protected, Constitutional right to sell or distribute marijuana, the PSAC would still fail to state an equal protection claim under either a “class of one” or “selective enforcement” theory. The PSAC fails to allege, beyond mere conclusory assertions, that a similarly situated comparator received more favorable treatment than Plaintiff. The PSAC alleges Plaintiff and Charlie Fox are both State-licensed to distribute cannabis and sought to establish dispensaries in the Town’s “Highway Business District [] along County Road 39.” (See PSAC ¶¶ 151-55.) Plaintiff and Charlie Fox

both were also subject to the Town's special use exception approval process. (See id.) But that is where Plaintiff and Charlie Fox's alleged similarities end. The PSAC fails to specify where in the Highway Business District Charlie Fox is located or its proximity to Plaintiff. The PSAC also does not comprehensively allege the ethnic or racial composition of Plaintiff's or Charlie Fox's ownership, apart from noting Plaintiff's "largest shareholder" is an African American man. (Id. ¶ 118.)

More importantly, the PSAC does not allege what, if anything, was wrong with Charlie Fox's property to prompt the Town to enjoin its operation. The PSAC baldly alleges Charlie Fox and the Town entered into an agreement to settle ongoing litigation in exchange for special exception approval, allowing Charlie Fox to lawfully open its dispensary. But Plaintiff fails to offer anything more than conclusory allegations to establish what motivated this agreement or the Town's approval of Charlie Fox's special exception. Put simply, the operational issues standing in the way of Plaintiff receiving the Town's approval for the same special exception may vastly differ from the issues faced (and resolved) by Charlie Fox. Because the PSAC wholly fails to proffer any factual allegations clarifying this point, neither the Court nor a jury can determine if Charlie Fox (or any other retail business in the Town) is similarly situated to Plaintiff for purposes of evaluating its equal protection claim. See Harper,

2025 WL 2653673, at *6 ("Conclusory allegations of selective treatment are insufficient to state an equal protection claim." (internal quotation marks omitted)). Because Plaintiff has failed to allege the existence of a similarly situated comparator, Plaintiff "cannot maintain an equal protection claim under either a selective enforcement or class of one theory." Viteritti v. Inc. Vill. of Bayville, 918 F. Supp. 2d 126, 136 (E.D.N.Y. 2013); cf. also Ruston v. Town Bd. for Town of Skaneateles, 610 F.3d 55, 60 (2d Cir. 2010) (affirming dismissal of "class of one" equal protection claim because plaintiffs failed to allege the purported comparator properties were so similar "no rational person could see them as different").

Accordingly, Plaintiff's proposed amendments to its equal protection claim are futile, and the motion to amend is DENIED, without prejudice, with respect to this claim.

ii. Donnelly Act Claim

The PSAC also proffers an additional cause of action under the Donnelly Act. See N.Y. GEN. BUS. LAW § 340. The Donnelly Act is modeled after the Sherman Anti-Trust Act, 15 U.S.C. §§ 1, et seq., and thus, is generally construed in light of federal precedent. See Great Atl. & Pac. Tea Co., Inc. v. Town of East Hampton, 997 F. Supp. 340, 352 (E.D.N.Y. 1998). "The Donnelly Act makes illegal and void any contract, arrangement or agreement that restrains competition in any business, or unlawfully interferes

with the free exercise of any activity in the conduct of any business." Id. (citing N.Y. GEN. BUS. LAW § 340).

To state a claim pursuant to the Donnelly Act, a complaint must "1) identify the relevant product market; 2) describe the nature and effects of the purported conspiracy; 3) allege how the economic impact of that conspiracy is to restrain trade in the market in question; and 4) show a conspiracy or reciprocal relationship between two or more entities." Id.; Benjamin of Forest Hills Realty, Inc. v. Austin Sheppard Realty, Inc., 823 N.Y.S.2d 79, 81-82 (App. Div. 2d Dep't 2006). "Conclusory allegations of conspiracy are legally insufficient to make out a violation of the Donnelly Act." Great Atl. & Pac. Tea Co., Inc., 997 F. Supp. at 352. To survive a motion to dismiss, a Donnelly Act claim must "include specific, factual allegations [about] [] the identities of the co-conspirators, the nature of their conspiracy, how the participants attempted to accomplish their objectives, and what overt acts they performed." Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC, 861 F. Supp. 2d 344, 371 (S.D.N.Y. 2012) (internal quotation marks and citation omitted).

Here, the PSAC fails to identify the "relevant product market," apart from stating both Plaintiff and Charlie Fox sought to operate within the Town's Highway Business District. This is insufficient to state a Donnelly Act claim. See Benjamin of Forest

Hills Realty, Inc., 823 N.Y.S.2d at 82 ("The plaintiff must explain why the market it alleges is in fact the relevant, economically significant product market." (internal quotation marks and citations omitted)); Shepard Indus., Inc. v. 135 E. 57th St., LLC, No. 97-CV-8447, 1999 WL 728641, at *4 (S.D.N.Y. Sept. 17, 1999) ("Plaintiff's failure to allege a geographic market and a product market is [] fatal to its Donnelly Act claim."). Nor does the PSAC allege the agreement between the Town and Charlie Fox restrained trade within the relevant market. Instead of identifying any alleged restraint on the market (whatever that market may be), Plaintiff simply alleges the "conspiracy" injured Plaintiff because it could not market itself as the Town's first legal dispensary. That is insufficient. See Dibble v. Schroedel, 239 N.Y.S. 3d 574, 574 (App. Div. 2d Dep't 2025) (at a minimum, a complaint must allege "both concerted action by two or more entities and a consequent restraint of trade within an identified relevant product market").

Further, the PSAC does not include any specific factual allegations about the nature of the conspiracy between the Town and Charlie Fox or the overt acts they engaged in to further this conspiracy. See Nat'l Gear & Piston, Inc., 861 F. Supp. 2d at 371 ([“]Unspecified contracts with unnamed other entities to achieve unidentified anticompetitive effects [do] not meet the minimum standards of pleading a conspiracy" under the antitrust laws

(internal quotation marks and citation omitted)). Moreover, the PSAC contains no facts to suggest the Town's approval of Charlie Fox's special use exception "was the product of a conspiracy or reciprocal arrangement, as opposed to a unilateral act by the Town that may have inured to the benefit of [other] retailers." Great Atl. & Pac. Tea Co., 997 F. Supp. at 352.

Accordingly, Plaintiff's proposed amendments regarding its Donnelly Act claim are futile. For the foregoing reasons, the Court finds it unnecessary to address the parties' remaining arguments at length.[7]

C. The Court Denies Plaintiff's Motion Without Prejudice

Accordingly, in its discretion, the Court DENIES Plaintiff's Motion without prejudice to renew. See, e.g., McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007) ("it is within the sound discretion of the [Court] to grant or deny leave to amend"). Although the claims proffered by the PSAC are futile, there have been several material factual developments in this action since Plaintiff filed this Motion.[8] (See supra

---

[7] It is well-settled "there is no requirement for a court to specifically address each and every argument raised by a party in papers filed with the Court." Hallmark Licensing, LLC v. Dickens, Inc., No. 17-CV-2149, 2020 WL 6157007, at *7 (E.D.N.Y. Oct. 21, 2020) (quoting Miller v. Metro. Life Ins. Co., No. 17-CV-7284, 2018 WL 5993477, at *5 n.5 (S.D.N.Y. Nov. 15, 2018) (further citations omitted)).

[8] While the claims articulated in the PSAC are futile, they are neither unduly prejudicial nor delayed. Cf. Rochester Drug Co-Operative, Inc. v. Hiscox Ins. Co., Inc., 545 F. Supp. 3d 21,

"Background," Part IV.) One such critical development is Plaintiff is open for business and fully operating. (See id.) Thus, the record before the Court would benefit from further clarification as to what, if any, of the claims in the Amended Complaint are still viable and why. However, the Court will not consider any renewed motion to amend that simply incorporates by reference any party's prior filings. See generally Tyson v. Town of Ramapo, No. 17-CV-4990, 2023 WL 3044623, at *1 (S.D.N.Y. Apr. 21, 2023) ("Judges are not like pigs, hunting for truffles buried in briefs or the record." (internal quotation marks and citation omitted)). And any proposed amended complaint must be supported by factual allegations sufficient to withstand a motion to dismiss and otherwise conform with the Court's rulings herein.

CONCLUSION

Accordingly, for the stated reasons, **IT IS HEREBY ORDERED** that Plaintiff's Motion to amend the Amended Complaint (ECF No. 28) is DENIED without prejudice to renew.

It is **FURTHER ORDERED** that Plaintiff shall have no more than 21 days from the date of this Memorandum and Order to file a renewed motion to amend. If no such motion is timely filed, the

25 (W.D.N.Y. 2021) (ruling defendant failed to demonstrate meaningful prejudice because allowing amendment would not "significantly delay final disposition" of the case nor impair or alter defendant's litigation strategy).

Amended Complaint (ECF No. 9) shall continue to be the operative Complaint in this action.

SO ORDERED.

/s/ JOANNA SEYBERT
Hon. Joanna Seybert, U.S.D.J.

Dated: August 13, 2026
Central Islip, New York