FILED
CLERK
11/12/2026
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------X
BROWN BUDDA NEW YORK, LLC,

Plaintiff,

-against-

TOWN OF SOUTHAMPTON; NEW YORK STATE OFFICE OF CANNABIS MANAGEMENT (OCM), as a "necessary party,"

Defendants.
---------------------------------X

MEMORANDUM & ORDER
25-CV-5053(JS)(ARL)

APPEARANCES

For Plaintiff: Christian Killoran, Esq.
Killoran Law PC
P.O. Box 918
Remsenburg, New York 11960

For Defendant Town of Southampton: Brian S. Sokoloff, Esq.
Vincent Edward Ferry, Esq.
Sokoloff Stern LLP
179 Westbury Avenue
Carle Place, New York 11514

For Defendant New York State Office of Cannabis Management: Tashi Topgyal Lhewa, Esq.
Patricia M. Hingerton, Esq.
New York Office of the Attorney General
300 Motor Parkway, Suite 230
Hauppauge, New York 11788

SEYBERT, District Judge:

Presently before the Court is a purported motion pursuant to article 78 of the New York Civil Practice Law and Rules ("Article 78") filed by Plaintiff Brown Budda New York, LLC ("Plaintiff") seeking a "declaratory judgment holding that the [New York State Cannabis Law] preempts" certain municipal regulations concerning nonmedical cannabis dispensaries enacted by Defendant Town of Southampton ("Town"). (See Killoran Decl., ECF No. 13-2, at 1.) Notwithstanding Plaintiff's inartfully pled motion papers, the Court construes the instant motion as one for partial summary judgment pursuant to Rule 56(a) of the Federal Rules of Civil Procedure. (See generally "Motion," ECF No. 13.) The Town opposed the Motion, and the New York State Office of Cannabis Management ("OCM"), a necessary party to this action, responded in support of Plaintiff's Motion. (See generally Opp'n, ECF No. 25; OCM Support Memo, ECF No. 19.)

For the reasons stated herein, Plaintiff's Motion is DENIED in its entirety without prejudice, the Court DISMISSES all Plaintiff's claims arising under New York state law, maintains jurisdiction over Plaintiff's remaining federal claims, and STAYS all proceedings in this case.

## BACKGROUND

### I. Relevant Factual Background[1]

The Court assumes the parties' familiarity with the factual background and circumstances giving rise to this action. See generally Brown Budda N.Y., LLC v. Town of Southampton, No. 25-CV-5053, 2026 WL 2363637 (E.D.N.Y. Aug. 13, 2026) (providing factual background relevant to the instant Motion). However, for context and convenience, the Court reiterates the relevant facts, and where necessary, provides additional background drawn from the second amended Complaint filed by Plaintiff on October 21, 2026 ("SAC," ECF No. 57)[2], and all materials submitted by the parties in connection with this Motion, unless otherwise stated. (See ECF Nos. 13, 19, 21, 24-25, 27, 30, 37-40.).

---

[1] Although the Court construes this Motion as one for partial summary judgment, as discussed infra, in briefing the Motion, the parties failed to comply with the Local Civil Rules of this District ("Local Rules") and the Individual Rules and Practices of this Court. The Court thus declines to speculate which "facts" advanced by the parties are undisputed for purposes of resolving this Motion. See generally Tyson v. Town of Ramapo, No. 17-CV-4990, 2023 WL 3044623, at *1 (S.D.N.Y. Apr. 21, 2023) ("Judges are not like pigs, hunting for truffles buried in briefs or the record." (internal quotation marks and citation omitted)). Still, it is necessary to disentangle the facts and allegations underlying this Motion to better understand the parties' respective positions and the Court's findings herein.

[2] While the Court passes no judgment on the merits of Plaintiff's claims added to the SAC (ECF No. 57), for avoidance of doubt, the SAC serves as the operative Complaint in this action.

A. New York State Cannabis Law

In or about March 2021, the New York state ("State") legislature enacted the Marijuana Regulation and Taxation Act ("MRTA" or "Cannabis Law") to "regulate, control and tax" the sale of marijuana[3] within the State. (See SAC ¶¶ 1, 3.) See also N.Y. CANBS. LAW §§ 1, et seq. To advance the intended purpose of the Cannabis Law, the State established OCM and the Cannabis Control Board ("CCB") to promulgate regulations and to issue licenses to applicants required for their sale and distribution of marijuana within the State. (See SAC ¶¶ 6-8.) Under the Cannabis Law, only State-licensed cannabis "dispensaries" are permitted to sell adult-use or recreational marijuana. (See id. ¶ 9.) The Cannabis Law also explicitly preempts all municipal governments "from adopting any law, rule, ordinance, regulation or prohibition pertaining to the operation or licensure of . . . adult-use cannabis licenses." N.Y. CANBS. LAW § 131(2).

However, municipalities, like the Town, may implement local laws and regulations restricting the time, place, and manner of cannabis dispensaries' operations, so long as the laws are not "unreasonably impracticable as determined by the [CCB]." Id. A municipal regulation is unreasonably impracticable if it impedes the duties and obligations of the CCB, "violates any provision of

[3] The Court refers to "marijuana" and "cannabis" interchangeably throughout this Memorandum and Order.

the Cannabis Law," or discriminates against a cannabis licensee's exercise of its "registration, license, or permit as issued by the [CCB]." N.Y. COMP. CODES R. & REGS. tit. 9, § 119.5(a) (2023).

B. Plaintiff Sought to Open a Cannabis Dispensary in the Town

In September 2022, Plaintiff applied to the State to operate as a "marijuana distributor," and sought to offer retail, delivery, and on-site cannabis consumption services. (SAC ¶¶ 16, 22.) On November 17, 2022, Plaintiff's predecessor in interest was issued a Conditional Adult-Use Retail Dispensary ("CAURD") license which was later transferred to Plaintiff. (See id. ¶ 17.) But on April 11, 2023, after Plaintiff applied for a license to operate within the Town, the Town enacted Southampton Town Code ("Town Code") Section 330-162.26, which established a zoning and permitting framework for adult-use cannabis dispensaries that required dispensaries to secure a "special use permit" to lawfully operate in the Town. (Id. ¶¶ 20, 44.)

C. The Town's Special Use Permitting Regime

The Town Code distinguishes as of right commercial uses from commercial uses requiring special use permits. See generally SOUTHAMPTON, N.Y., CODE § 330-30. The Town Code lists which types of businesses or activities are allowed in each of the Town's zoning districts and categorizes such uses as permitted by right, subject to special use exceptions, or prohibited. See id. § 330-33.

Adult-use cannabis dispensaries are not permitted as of right within any of the Town's eight business zoning districts. See id.

Plaintiff's dispensary is located within the Town's Highway Business zoning district ("Highway Business District"). (See SAC ¶ 114.) According to the Town Code, adult-use cannabis dispensaries, along with 42 other business uses, must secure a special use permit from the Town to lawfully operate within the Highway Business District. See SOUTHAMPTON, N.Y., CODE § 330-33.[4] In comparison, 75 business uses may operate within the Highway Business District as of right, without a special use permit. See id.[5]

Business uses requiring a special use exception to operate within a specific zoning district must apply to the Town planning board ("Planning Board")[6] for a permit. See

---

[4] Business uses requiring a special use permit include (but are not limited to) businesses selling or utilizing heavy machinery or equipment, gas stations, automotive repair shops, wholesale alcoholic beverage retailers, drive-through businesses, bars, nightclubs, movie theaters, and bowling alleys. See SOUTHAMPTON, N.Y., CODE § 330-33.

[5] The following business uses (among others) do not require a special use permit: furniture stores, "standard" restaurants, retail liquor stores, several office and professional service businesses, funeral services, tanning salons, and gyms. Id.

[6] The Planning Board is not a necessary party to this action. See Soundview Assocs. v. Town of Riverhead, 725 F. Supp. 2d 320, 343-44 (E.D.N.Y. 2010) (finding allegations against a town board and planning department were more appropriately raised against the town itself because under State law, "departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality, and therefore, cannot sue or be sued.").

id. § 330-120. The Planning Board is empowered to approve, conditionally approve, or deny special use exception applications. See id. Special use exception applications are subject to public notice and hearing requirements, as well as other discretionary requirements which may be imposed by the Planning Board. See id. § 330-121. Generally, all special use exception applicants must show the proposed business use will not disrupt adjacent properties, has adequate facilities to safely manage vehicle and pedestrian traffic, and provides sufficient parking. See id. § 330-122.

Pursuant to Town Code Section 330-162.26, adult-use cannabis dispensaries must satisfy additional specific requirements regarding signage, physical appearance, parking, outdoor speakers and music, hours of operation, and proximity to residences, houses of worship, community facilities, and schools. See id. § 330-162.26. The Planning Board may also require such dispensaries to provide "a pedestrian circulation plan demonstrating that walkways and/or sidewalks facilitate pedestrian movement." Id. § 330-162.26(K).

D. Plaintiff Applied to the Town for a Special Use Permit

According to the Town, Plaintiff formally applied for a special use exception on March 11, 2025. (See Opp'n at 3.) Following an environmental and land-use review, public hearing, and written comment period, the Town conditionally approved

Plaintiff's site plan and special use exception application on July 24, 2025. (See id.) Thus, Plaintiff's eligibility for a "building permit[7] or operational authorization" was conditioned upon Plaintiff's compliance with several dispensary-specific land-use requirements established by Town Code Section 330-162.26. (Id.)

The Town contends Plaintiff subsequently satisfied most of the Town Code's requirements, including those relating to signage, lighting, security measures, and landscaping. (See id.) However, Plaintiff failed to install the "required" sidewalk abutting Plaintiff's property and County Road 39. (See id. at 4.)

E. The Parties' Dispute Regarding the Sidewalk

The parties dispute whether Plaintiff must install this sidewalk to operate lawfully in the Town and, if so, which municipal entity mandates it. According to the Town, it must refer special use applications to Suffolk County's department of public works ("DPW") for review and recommendation if the subject property is within 500 feet of a Suffolk County ("County") road. See N.Y. Gen. Mun. Law § 239-m(3)[8]; (see also Def.'s OTSC Resp., ECF No. 37, at 3.) Because Plaintiff's cannabis dispensary is located on

---

[7] Throughout its Motion papers, the Town fails to clearly distinguish this vague, undefined "building permit" from a special use permit. (See generally Opp'n.)

[8] Pursuant to the statute, the Town could deny the County's recommendations under certain circumstances. See N.Y. Gen. Mun. Law § 239-m(3).

County Road 39, the Town referred Plaintiff's special use application to the County. (See id. at 3.) In response to the Town's referral, the County DPW "require[d] [the] installation of a sidewalk along County Road 39." (Opp'n at 4 (emphasis added); see also Def.'s OTSC Resp. at 3.) Thus, the Town maintains Plaintiff must install the sidewalk to obtain a building permit and lawfully operate within the Town. (See id.) And according to the Town, on September 10, 2025, Plaintiff signed a conditional site plan map, thereby agreeing to comply with its provisions and the Town's conditions for special use approval. (See Site Plan Map, Ex. B, ECF No. 24-2, attached to Sokoloff Decl.)

F. OCM Opines Town Code Section 330-162.26 is Preempted by the Cannabis Law

On October 6, 2025, OCM issued an advisory opinion responding to inquiries by Plaintiff and another adult-use cannabis dispensary seeking to operate within the Town, Mottz Only Authentic New York Style LLC ("Mottz"), about Town Code Section 330-162.26 and other Town regulations impacting cannabis dispensaries. (See "October 6 Advisory," Ex. 2, ECF No. 13-4, at 1, attached to Motion.) In its October 6 Advisory, OCM opined the special use permitting regime specific to adult-use cannabis dispensaries established by Town Code Section 330-162.26 was unreasonably impracticable, and thus, preempted by the Cannabis Law. (See id. at 2.)

G. Plaintiff Continues to Operate its Cannabis Dispensary without Town Authorization

Still, the Town continued to insist Plaintiff obtain both "site-plan" and "special exception" approval to lawfully operate within the Town. (SAC ¶ 47.) When Plaintiff failed to secure these approvals due, in part, to its alleged refusal to install the sidewalk, the Town informed Plaintiff "no commercial activity may be conducted at the subject premises . . . until [] site-plan approval is obtained." (Id. ¶ 48.)

Despite the Town's objections, Plaintiff opened for business on or about November 12, 2025. (See id. ¶ 76.) To date, Plaintiff has not installed a sidewalk fronting County Road 39. (See Pl.'s Status Ltr., ECF No. 49.) Thus, Plaintiff remains unable to secure a building permit from the Town and is "operating under continual municipal citation," resulting in damages. (SAC ¶¶ 149, 154-59.)

II. Relevant Procedural History

A. Commencement of the Action

On August 26, 2025, Plaintiff commenced this action against the Town in New York State Supreme Court, County of Suffolk. (See generally Notice of Removal, ECF No. 1.) The Town removed this action to federal court on September 9, 2025, asserting this Court's original jurisdiction over Plaintiff's federal Constitutional claims. (See id. (citing

28 U.S.C. § 1331).) On October 23, 2025, Plaintiff amended its Complaint to add OCM as a necessary party to the action. (See generally Am. Compl., ECF No. 9.)

B. The Motion

On November 5, 2025, Plaintiff filed this Motion, along with a proposed order to show cause for emergency declaratory judgment ("Emergency Application"). (See generally Emergency Application, ECF No. 14.) On November 7, 2025, the Court denied Plaintiff's Emergency Application and set a briefing schedule for the instant Motion. (See Nov. 7, 2025 Elec. Order.) On December 5, 2025, OCM filed a memorandum in support of Plaintiff's Motion. (See generally OCM Support Memo.) Also on December 5, 2025, the Town served its response in opposition to the Motion on Plaintiff. (See Def.'s Ltr., ECF No. 23.) By December 16, 2025, the Motion was fully briefed and filed with the Court. (See generally Motion, ECF Nos. 13, 19, 21-25, 27.)

i. In *Mottz*, a State Court Found Relevant Provisions of the Town Code Preempted by the Cannabis Law

On December 23, 2025, in Mottz Only Authentic N.Y. Style LLC v. Town of Southampton, a New York State Supreme Court granted the plaintiff's motion for summary judgment and found Town regulations, Sections 3 and 5 of Local Law 15-2023 and Town Code Section 330-162.26, requiring nonmedical cannabis dispensaries to obtain a "Special Exception . . . prior to operation" preempted by

the Cannabis Law. (OCM Ltr. Regarding Mottz, ECF No. 30, at 2 (attaching State court's Mottz decision).) Thus, the court in Mottz permanently enjoined the Town from enforcing Town Code Section 330-162.26. (See id. at 4.) The court further ordered the Town to issue Mottz any permits or approvals consistent with State law. (See id. at 2.)

On January 16, 2026, this Court issued an order to show cause ("OTSC") directing the Town to explain why the Court should not grant the Motion declaring the Town unlawfully subjected Plaintiff to a special use permitting regime preempted by the Cannabis Law, consistent with the reasoning and disposition of Mottz. (See Jan. 16, 2026 Elec. Order.)

ii. The Parties' Positions on the Motion and *Mottz*'s Impact

In relevant part, Plaintiff argues the special use permitting framework established by Town Code Section 330-162.26 requires nonmedical cannabis dispensaries to comply with several impermissible time, place, and manner restrictions that make Plaintiff's operations unreasonably impracticable, and thus, this permitting framework is wholly preempted by the Cannabis Law. (See generally Motion.) As a result, Plaintiff maintains it is entitled to both injunctive and compensatory relief for damages stemming from the Town's enforcement of its unlawful permitting regime. (See generally SAC).

OCM also argues in support of declaratory judgment, doubling down on its October 6 Advisory (see supra "Background," Part (I)(F)) and further contending that municipal land-use regulations specifically targeting nonmedical cannabis dispensaries and falling outside the Cannabis Law's exhaustive list of permissible time, place, and manner restrictions[9] are preempted and invalid. (See OCM Support Memo at 11-12; OCM Mot. Reply, ECF No. 27, at 2, 4.) Moreover, because the special use permitting regime established by Town Code Section 330-162.26 is preempted by the Cannabis Law, every precondition underlying that permitting regime must also be invalid. (See OCM's OTSC Resp., ECF No. 40, at 1-2.) Thus, the sidewalk "requirement" stemming from the Town's unlawful designation of nonmedical cannabis dispensaries as special use sites is invalid and unenforceable. (See id.)

In opposition to the Motion, the Town argues, inter alia, the court in Mottz left intact Town Code Section 330-162.26(K), the provision governing pedestrian circulation, and did not find it an impermissible time, place, or manner restriction. (See Def.'s OTSC Resp. at 2.) Indeed, the Town contends such municipal

[9] According to OCM, municipalities may only regulate cannabis dispensaries' hours of operation, visual and architectural "integrity" within historical districts, parking, "traffic control, including . . . pedestrian . . . traffic," odor, noise, and specific distance requirements. N.Y. COMP. CODES R. & REGS. tit. 9, § 119.2(a).

regulations requiring pedestrian circulation measures are expressly permitted by the Cannabis Law and its regulations. (See id. at 3); see also N.Y. COMP. CODES R. & REGS. tit. 9, § 119.2(a)(7).

The Town further argues the Cannabis Law does not preempt New York General Municipal Law Section 239-m, which empowers the Town to submit special use exception applications to the County DPW for review and recommendation. (See Def.'s OTSC Resp. at 3-4.) The Town also cites a "2023 news article about the sidewalks planned for County Road 39, the road at issue here," to show the sidewalk mandate stems from the County's "Complete Streets" legislation passed in 2012. (See Opp'n at 10); see also County Road Sidewalk Project Delayed to 2027; 'Absurd' North Sea Road Sidewalk Plan Decried by CAC, 27EAST (Apr. 19, 2023) https://www.27east.com/southampton-press/news/government-news/article_c0a4257a-a0bc-5687-87c9-b5734e10f02e.html (hereafter, "County Road Article").[10] The County's review of Plaintiff's special use application and mandate that a sidewalk be installed fronting County Road 39 thus remains valid and enforceable. (See id.) Moreover, because the sidewalk requirement stems from the County, the County should be joined as a necessary

---

[10] This same article suggests the County DPW plans to install sidewalks on both sides of County Road 39 beginning in 2027. See generally County Road Article.

party to this action pursuant to Federal Rule of Civil Procedure 19. (See id. at 4-5.)

C. Hearings on the Motion

On February 27, 2026, the Court held oral argument on the Motion. (See Feb. 27, 2026 Minute Entry.) At this hearing, the parties agreed the remaining obstacle to Plaintiff obtaining a building permit and lawfully operating within the Town was the alleged sidewalk requirement, as Plaintiff was reportedly quoted between $60,000 and $80,000 for the sidewalk installation. (See generally id.) Shortly thereafter, on March 23, 2026, the Court held a status conference, in part, to further discuss the Motion and to assess the parties' appetite for settlement. (See Mar. 23, 2026 Minute Entry.) To date, the sidewalk issue remains central to the parties' dispute. (See ECF Nos. 49-51.)

DISCUSSION

I. Legal Standard for Summary Judgment Motions Under Rule 56(a)

"[W]here (as here) a motion for declaratory judgment addresses claims advanced in a [] complaint, courts in this District may construe such a motion as a motion for summary judgment [] pursuant to Rule 56 of the Federal Rules of Civil Procedure." Days v. Eastchester Police Dep't, No. 18-CV-11538, 2023 WL 2479959, at *2 (S.D.N.Y. Mar. 13, 2023) (collecting cases); see also Int'l Bhd. of Teamsters v. E. Conf. of Teamsters, 160 F.R.D. 452, 457 (S.D.N.Y. 1995) (finding "[t]he only way

plaintiffs' motion can be construed as being consistent with the Federal Rules is to construe it as a motion for summary judgment on an action for a declaratory judgment.").

A court shall grant summary judgment under Rule 56(a) when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "The movant bears the burden of 'demonstrat[ing] the absence of a genuine issue of material fact.'" Nick's Garage, Inc. v. Progressive Cas. Ins. Co., 875 F.3d 107, 114 (2d Cir. 2017) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

## II. Analysis

### A. The Court Declines Supplemental Jurisdiction Over Plaintiff's State Law Claims

Federal district courts may exercise supplemental jurisdiction over state law claims that "form part of the same case or controversy" as the asserted federal claims conferring subject matter jurisdiction. Figurowski v. Marbil Investors, LLC, No. 14-CV-7034, 2015 WL 4000500, at *3 (E.D.N.Y. July 1, 2015) (citing 28 U.S.C. § 1367(a)). However, a district court may decline to exercise supplemental jurisdiction over state claims under any of the following circumstances: "(1) the claim raises a novel or complex issue of State law," (2) the State claim substantially predominates over the federal claim(s) conferring

original jurisdiction, "(3) the district court has dismissed all claims over which it has original jurisdiction," or (4) other exceptional, compelling reasons support declining jurisdiction. Carver v. Nassau County Interim Fin. Auth., 730 F.3d 150, 153 (2d Cir. 2013) (quoting 28 U.S.C. § 1367(c)).

i. Plaintiff's Declaratory Judgment Claim Raises a Novel or Complex Issue of State Law

Here, the question central to Plaintiff's declaratory judgment claim is whether the special use permitting framework established by Town Code Section 330-162.26, requiring nonmedical cannabis dispensaries to satisfy certain prerequisites to operational authorization, is preempted by the Cannabis Law. As explained above, in Mottz, a State Supreme Court held the Cannabis Law preempts Town Code Section 330-162.26. (See supra "Background," Part (II)(B)(i).) The Town subsequently appealed the Mottz decision. See Mottz Only Authentic N.Y. Style LLC v. Town of Southampton, No. 2026-00015, 2026 N.Y. Slip Op. 70313(U) (N.Y. App. Div. 2d Dep't June 12, 2026). The State appellate court ("Second Department") thus stayed enforcement of the lower court's decision and granted the appeal calendar preference. See id. ("[T]he appeal will be calendared expeditiously."). On September 3, 2026, the Town's appeal in Mottz was fully briefed. The Second Department's decision on the appeal is pending. Thus, no State appellate court has ruled on whether the Cannabis Law preempts

Town Code Section 330-162.26. Nor has a State appellate court, more generally, determined to what extent the Cannabis Law precludes municipalities from implementing time, place, and manner restrictions regarding pedestrian circulation, which is the crux of the issue here.

That said, State courts have recently tackled similar questions about the Cannabis Law and how it preempts or intersects with municipal laws and regulations concerning adult-use cannabis dispensaries. In 1086 OCR, LLC v. Town of Riverhead, the Second Department held the Cannabis Law preempted a town code provision prohibiting cannabis dispensaries from operating within 1,000 feet of a school, because such provisions "impose[d] additional restrictions on rights granted by [S]tate law" inconsistent with the State's overriding interest. See 251 A.D.3d 1054, 1057 (2d Dep't 2026) (reasoning that by enacting the Cannabis Law, the State legislature "expressly stated its intent to occupy the field of the operation of licensed adult-use cannabis retail dispensaries.").

But in Tink & E. Co., Inc. v. Town of Riverhead, the Second Department declined to hold that all municipal zoning restrictions on cannabis dispensaries are inherently unlawful unless such restrictions are explicitly contemplated by the Cannabis Law or its regulations. See 251 A.D. 3d 1085 (2d Dep't 2026) (holding that a town code provision barring cannabis

dispensaries within 1,000 feet of a residence, but exempting properties with frontage along specific commercial corridors, complied with N.Y. Town Law § 262's uniformity requirement because a rational basis justified the disparate treatment of properties within the same business district).

The State has also created a complex statutory and administrative scheme surrounding the Cannabis Law. (See supra "Background," Part (I)(A).) The State created OCM and the CCB, which promulgate and implement regulations, issue advisory opinions, and oversee a comprehensive cannabis establishment licensing regime. See N.Y. CANBS. LAW §§ 125, et seq. The Cannabis Law also expressly preempts municipal governments from unduly regulating or prohibiting the operation of adult-use cannabis dispensaries. See id. § 131(2); (see also supra "Background," Part (I)(A).) In exercising its powers conferred by State law, OCM has strongly and consistently supported Plaintiff's position that the Cannabis Law preempts Town Code Section 330-162.26. (See generally Oct. 6 Advisory; OCM Support Memo; OCM Mot. Reply; OCM's Resp. to OTSC.)

Thus, given the Cannabis Law's rapidly developing legal landscape, the pending appeal in Mottz, and the overarching State interests demonstrated by OCM's participation in this action, whether the Cannabis Law preempts Town Code Section 330-162.26 "presents an unresolved question of state law . . . involv[ing]

the construction of a significant provision of an extraordinarily consequential legislative scheme." Carver, 730 F.3d at 154. This weighs in favor of declining supplemental jurisdiction over Plaintiff's State law claims, which all hinge on this preemption question. Cf. Wilson v. Dantas, No. 12 Civ. 3238, 2013 WL 92999, at *9 (S.D.N.Y. Jan. 7, 2013) (district courts should avoid issuing "[n]eedless decisions of state law . . . as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." (internal quotation marks omitted)).

Remitting Plaintiff's State law claims at this early stage of the litigation also "does not create substantial unfairness or inconvenience to the parties," because the Town has not submitted a responsive pleading[11] and the parties have not completed fact discovery or made steps toward trial. Id.

ii. Plaintiff's Article 78 Claim Presents a Compelling Reason for Declining Jurisdiction

Moreover, the "very nature" of the Article 78 proceeding Plaintiff seeks to implement serves as another compelling reason for declining jurisdiction here. Morningside Supermarket Corp. v. N.Y.S. Dep't of Health, 432 F. Supp. 2d 334, 346 (S.D.N.Y. 2006). Article 78 proceedings are governed by State law and used to

[11] The Court does, however, acknowledge the Town's pending pre-motion conference request seeking to dismiss the SAC. (See Def.'s PMC Request, ECF No. 58.)

challenge state administrative actions. See Whitfield v. City of N.Y., 96 F.4th 504, 519 (2d Cir. 2024). Article 78 proceedings are substantively limited and characterized by an "expedited 'summary procedure.'" Id. at 519-20; see also N.Y. C.P.L.R. 7803. Thus, an Article 78 proceeding is "a novel and special creation of state law and differs markedly from the typical civil action brought in federal court." Morningside Supermarket Corp., 432 F. Supp. 2d at 346 (cleaned up).

As such, "[t]he overwhelming majority of district courts confronted with the question of whether to exercise supplemental jurisdiction over Article 78 claims have found that they are without power to do so or have declined to do so." E. End Eruv Ass'n, Inc. v. Town of Southampton, No. CV 13-4810, 2014 WL 4826226, at *16 (E.D.N.Y. Sept. 24, 2014) (internal quotation marks omitted) (collecting cases); see also Eric Adams 2025 v. New York City Campaign Fin. Bd., 790 F. Supp. 3d 170, 189-90 (E.D.N.Y. 2025) ("The Second Circuit has not resolved the question of whether a federal court may exercise supplemental jurisdiction over claims brought pursuant to Article 78.").

For this additional reason, the Court declines to exercise supplemental jurisdiction over Plaintiff's Article 78 claim. See also Bd. of Managers of Soho Int'l Arts Condominium v. City of N.Y., No. 01 Civ. 1226, 2004 WL 1982520, at *28-29 (S.D.N.Y. Sept. 8, 2004) (declining to exercise supplemental

jurisdiction over Article 78 claim despite existence of federal claims).

B. Abstention is Also Proper Under *Pullman*

Alternatively, the Court abstains from ruling on whether the Cannabis Law preempts Town Code Section 330-162.26. A federal court may abstain from deciding a state law issue "when it appears that abstention may eliminate or materially alter the constitutional issue presented." Ohio Bureau of Emp't Servs. v. Hodory, 431 U.S. 471, 481 (1977) (citing Railroad Comm'n of Tex. v. Pullman Co., 312 U.S. 496 (1941)). Pullman abstention is an "extraordinary and narrow exception" to a district court's duty to adjudicate the case before it. Allegheny v. Frank Mashuda Co., 360 U.S. 185, 188(1959). Still, Pullman abstention is appropriate where three conditions are met: (1) the state statute is "unclear or the issue of state law [is] uncertain"; (2) "resolution of the federal issue depend[s] upon the interpretation to be given to the state law"; and (3) "the state law [is] susceptible of an interpretation that would avoid or modify the federal constitutional issue." Moore v. County of Suffolk, 851 F. Supp. 2d 447, 456-57 (E.D.N.Y. 2012).

For substantially the same reasons detailed above (see supra "Discussion," Part (II)(A)), the instant action satisfies all three Pullman factors. See Ne. Mines, Inc. v. Town of Smithtown, 584 F. Supp. 112, 115 (E.D.N.Y. 1984). Here, Town Code

Section 330-162.26 "[has] not been definitively interpreted by the New York courts" and Plaintiff's "arguments raising the constitutionality of [the Town's] actions taken in reliance upon the municipal ordinances in question raise novel state law issues." Id. The scope of the Cannabis Law's power to preempt municipal land-use regulations is also unclear. Compare N.Y. COMP. CODES R. & REGS. tit. 9, § 119.2(a) with 1086 OCR, LLC, 251 A.D.3d 1054, and Tink & E. Co., Inc., 251 A.D. 3d 1085. But, as explained above, a decision by the Second Department determining how, if at all, Town Code Section 330-162.26 is preempted by the Cannabis Law is imminent. See Mottz, 2026 N.Y. Slip Op. 70313(U). Thus, the Second Department's decision in Mottz will present "an authoritative answer, rather than merely a forecast on the state questions, and depending on how the state questions are answered, may make it unnecessary to decide the federal constitutional issue[s]." Jancyn Mfg. Corp. v. Suffolk County, 583 F. Supp. 1364, 1370 (E.D.N.Y. 1984).

Moreover, Plaintiff's federal Constitutional claims are dependent upon the resolution of its State law claims. If the Second Department (or another State appellate court) holds the Cannabis Law preempts the provisions of the Town Code at issue here, those provisions will be deemed invalid and unenforceable. Such a holding would moot, or at least fundamentally alter, Plaintiff's remaining federal Constitutional claims. Thus, the

Court abstains also on Pullman grounds. See Ne. Mines, Inc. v. Town of Smithtown, 584 F. Supp. 112, 115 (E.D.N.Y. 1984); see also Jancyn Mfg. Corp., 583 F. Supp. at 1371 (finding Pullman abstention proper where a federal decision could disrupt "an entire legislative scheme of regulation," even if no party asks the court to abstain and litigation has been lengthy).

C. The Court Also Denies the Motion for Failure to Comply with the Local Rules of this District and this Court's Individual Rules and Practices

In any event, the Court denies the Motion in its entirety, without prejudice, as premature and for failure to comply with applicable rules governing summary judgment motion practice. First, Plaintiff's purported Motion for declaratory judgment is procedurally improper. Plaintiff does not so much as cite under which Federal Rule of Civil Procedure it purports to bring its Motion. (See Motion, in toto.) Assuming Plaintiff seeks to bring this Motion under Rule 57 of the Federal Rules of Civil Procedure, "Rule 57 does not provide a basis for making a motion; it just acknowledges the availability of declaratory judgment as a remedy." Fusco v. Rome Cable Corp., 859 F.Supp. 624, 628 (N.D.N.Y.1994) (footnote omitted); see also Days, 2023 WL 2479959, at *1 (finding Rule 57 is not the proper vehicle for bringing a declaratory judgment motion, thus denying the motion as a premature, procedurally deficient motion for summary judgment). Nor does the federal Declaratory Judgment Act (28 U.S.C. § 2201)

"provide an independent basis for making a motion; it simply creates the remedy of declaratory relief." Buck v. Libous, No. 302CV1142FJSDEP, 2005 WL 1460408, at *9 (N.D.N.Y. June 20, 2005). Thus, the Court construes the instant Motion as one for partial summary judgment of Plaintiff's Article 78 claim.

In briefing a motion for summary judgment, the parties must comply with Local Rule 56.1, which is intended "to streamline the consideration of summary judgment motions by freeing district courts from the need to hunt through voluminous records without guidance from the parties." Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 74 (2d Cir. 2001), abrogated on other grounds by Zennamo v. County of Oneida, No. 25-732-CV, 2026 WL 2056152 (2d Cir. July 16, 2026) (citing LOCAL CIV. R. 56.1(a)). Local Rule 56.1 "requires a party moving for summary judgment to submit 'a separate, short and concise statement' setting forth material facts as to which there is no genuine issue to be tried." Id. at 72. "A party opposing summary judgment must respond with a statement of facts as to which a triable issue remains." Id.

The parties failed to comply with Local Rule 56.1. As a result, the Court could not readily determine which relevant facts are undisputed for purposes of resolving this Motion. See Toussie v. Allstate Ins. Co., 213 F. Supp. 3d 444, 445 (E.D.N.Y. 2016) ("[C]ourts routinely deny motions for summary judgment as premature when discovery over relevant matters is incomplete.").

Accordingly, the Court DENIES Plaintiff's Motion in its entirety, without prejudice.

D. The Court Denies Plaintiff's Motion Without Prejudice, Dismisses Plaintiff's State Law Claims, and Stays this Action

For the foregoing reasons, the Court denies Plaintiff's Motion in its entirety and declines to exercise supplemental jurisdiction over Plaintiff's State law claims, and thus, dismisses them. See Lyndonville Sav. Bank & Tr. Co. v. Lussier, 211 F.3d 697, 700 (2d Cir. 2000) ("[F]ailure of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court sua sponte."); cf. also Catzin v. Thank You & Good Luck Corp., 899 F.3d 77, 84 (2d Cir. 2018) (in resolving a motion for summary judgment, "an opportunity to be heard on whether to exercise supplemental jurisdiction may be inherent," and in such situations, "a district court need not provide a separate opportunity to be heard beyond the briefing and resolution of such motions."). However, the Court will maintain jurisdiction over Plaintiff's remaining federal claims and stay all proceedings in this case "pending a resolution of the preemption issue by the state court[]" in Mottz. See Jancyn Mfg. Corp., 583 F. Supp. at 1376-77.

Although the Court declines to rule on the merits of Plaintiff's Motion for the reasons explained above, the Court would be remiss to ignore the extensive and, at times, confusing

litigation this seemingly simple preemption question has spawned. This action has generated several motions for decision and over 60 docket entries – all before the Town has filed a responsive pleading and before the parties have made substantive discovery progress. (See Case Docket, in toto.)

All the while, Plaintiff continues to operate its cannabis dispensary within the Town. (See supra "Background," Part (I)(G).) Despite this, the parties' squabble over a sidewalk requirement persists. In support of its position that a sidewalk is required by the County, the Town cites an article that suggests the County plans to fund and install sidewalks along the road at issue, County Road 39, itself. See County Road Article (stating the County DPW's "plan to add sidewalks on both sides of County Road 39 has been put off until 2027."). Thus, during the Court's stay of this action, the Court urges the parties to prudently confront the sidewalk issue and determine how this matter can be efficiently resolved.

CONCLUSION

Accordingly, for the stated reasons, **IT IS HEREBY ORDERED** that Plaintiff's Motion for partial summary judgment of its declaratory judgment action (ECF No. 13) is DENIED in its entirety, without prejudice.

It is **FURTHER ORDERED** that Plaintiff's State law claims articulated in the SAC (ECF No. 57) are DISMISSED without

prejudice, and this action is otherwise STAYED pending consideration of Mottz Only Authentic N.Y. Style LLC v. Town of Southampton, No. 2026-00015, by the New York State Appellate Division, Second Department.

SO ORDERED.

/s/ JOANNA SEYBERT
Hon. Joanna Seybert, U.S.D.J.

Dated: November 12, 2026
Central Islip, New York